UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKONNIE M.,[1]<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No.: 22cv985-LR<br><br>**ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW**<br><br>**[ECF No. 19]** |

　　　　On July 6, 2022, Lakonnie M. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits.  (ECF No. 1.)  Now pending before the Court is the parties' "Joint Motion for Judicial Review" seeking judicial review ("Joint Motion").  (ECF No. 19 ("J. Mot.").)  For the reasons discussed below, the final decision of the Commissioner is **REVERSED**, and the case is **REMANDED** for further proceedings.

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

## I. PROCEDURAL BACKGROUND

On February 6, 2020, Plaintiff filed an application for social security disability benefits under Title II of the Social Security Act (the "Act"), alleging disability beginning February 5, 2020.[2] (ECF No. 13 ("AR")[3] at 15, 151.) After her application was denied initially and upon reconsideration, (id. at 15, 86–89, 93–98), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), (id. at 99–100). An administrative hearing was held on May 13, 2021. (Id. at 29–47, 117, 136.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE"). (Id. at 29–47.)

As reflected in his July 9, 2021 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from February 5, 2020, through the date of the decision. (Id. at 16, 23–24.) The ALJ's decision became the final decision of the Commissioner on May 31, 2022, when the Appeals Council denied Plaintiff's request for review. (Id. at 1–6.) This timely civil action followed. (See ECF No. 1.)

## II. SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR at 17.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "ear pain with vertigo; migraine headaches; hearing loss: generally mild per testing at Family Health Center."

---

[2] The ALJ's written decisions and the parties' Joint Motion list February 6, 2020, as the date when Plaintiff filed her application for social security disability benefits, and February 5, 2020, as the alleged disability onset date. (AR at 15; J. Mot. at 2 (citing AR at 151–57).) The referenced application, however, lists February 24, 2020, as the application date and disability onset date. (AR at 151; see also id. at 150.)

[3] "AR" refers to the Administrative Record filed on September 27, 2022. (ECF No. 13.) The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

(Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 19.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except limited to occasional postural activity, except no climbing of ladders or scaffolds; no exposure to hazards such as dangerous moving machinery and unprotected heights; and no work in environments with excessive noise or environments requiring fine hearing."  (Id.)

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a cytotechnologist.  (Id. at 23.)  The ALJ then found that Plaintiff was not disabled.  (Id.)

### III.  DISPUTED ISSUE

As reflected in the parties' Joint Motion, Plaintiff is raising the following issue as the ground for reversal and remand—whether the ALJ properly considered the evidence of mental impairment affecting Plaintiff's ability to perform past skilled work.  (J. Mot. at 6.)

### IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion,"

and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision. Id. at 1115–16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely." Revels, 874 F.3d at 654 (internal quotation omitted).

## V. DISCUSSION

### A. Parties' Arguments

Plaintiff argues that the ALJ did not properly consider the evidence of mental impairment affecting Plaintiff's ability to perform past skilled work. (See J. Mot. at 6–9.) First, Plaintiff contends that her mental impairment is medically determinable, contrary to the ALJ's determination that medical records did not support a finding of depression as a medically determinable impairment. (See id. at 6–7; see also AR at 18.) Plaintiff asserts that state agency medical consultants, Karen Ying, M.D. and Ellen Rozenfeld, Psy.D., described Plaintiff's depressive, bipolar, and related disorders as "medically determinable," and found that Plaintiff had mild limitations in adapting or managing herself. (J. Mot. at 6–7 (citing AR at 63–64, 79–80).) Plaintiff further asserts that the ALJ improperly concluded that because he did not assess greater than mild limitations in the four "B" criteria, Plaintiff's mental impairment was not "severe." (J. Mot. at 6 (citing AR at 19).) Plaintiff alleges that "severe" addresses the capacity to engage in basic work activities, and the ALJ failed to "consider the non-severe impairments as a combined effect on the ability to engage in either past work or other work." (J. Mot. at 6.) Second, Plaintiff maintains that her mental impartment affects her ability to perform past skilled work as a cytotechnologist. (Id. at 7–9.)

Defendant argues that the ALJ property found that Plaintiff did not have a severe medically determinable mental impairment. (Id. at 10–15.) Defendant asserts that there was insufficient evidence to establish depression as a medically determinable

impairment. (Id. at 10.) Defendant maintains that while Dr. Ying found the presence of a medically determinable impairment in considering Listing 12.04 (Depressive, Bipolar, and Related Disorders), "it is unclear what MDI she found was present." (Id. (citing AR at 63).) Defendant also contends that Dr. Rozenfeld's findings were based on a treatment record from a Keegan Wood, N.P.[4] who diagnosed Plaintiff with "major depressive disorder, recurrent, mild." (J. Mot. at 6 (citing AR at 80, 1267).) Defendant further argues that a diagnosis from an acceptable medical source alone is not sufficient to establish a medically determinable impairment, and a claimant is required to establish a medically determinable impairment with objective medical evidence. (J. Mot. at 10–11.) Additionally, Defendant asserts that even if the ALJ erred, the error was harmless because Plaintiff's "mental-status examinations, activities of daily living, observed capabilities, own account of her capabilities, and the medical opinions established, at most, mild mental limitations that did not result in any significant deficits." (Id. at 11 (citing AR at 18–19).)

     Plaintiff replies that the ALJ incorrectly concluded that Plaintiff did not have a medically determinable impairment because Plaintiff's depression was not severe. (J. Mot. at 15–16.) Plaintiff asserts that "medically determinable" and "severe" represent two different findings at step two of the sequential evaluation process. (Id. at 16.) Plaintiff contents that the ALJ committed a reversible error. (Id. at 9, 17.)

---

[4] Defendant claims that the record does not establish whether Mr. Wood was an acceptable medical source qualified to offer a diagnosis because Mr. Wood is a Nurse Practitioner. (See J. Mot. at 10–11.) The ALJ, however, did not discuss whether Keegan Wood, N.P. was an acceptable source under the regulations in his written opinion. (See AR at 15–24.) The Court can only assess the reasoning the ALJ provided in his decision. See Revels, 874. F.3d at 654 (stating that a court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely"). Further, as discussed in detail in this Order, Plaintiff's medical records also contain diagnoses of depression and bipolar disorder by several Medical Doctors.

**B.    Relevant Medical Records and Testimony During Plaintiff's Administrative Hearing**

### 1. Plaintiff's depression and bipolar disorder diagnoses

Plaintiff's medical records document her reported history of depression dating back to 2000. (See AR at 830 (containing appointment notes from Keegan Wood N.P. stating that Plaintiff reported that her depression started in 2000), 1222 (same), 1242 (same), 1265 (same).) Further, the records contain evidence of a possible depression diagnosis on April 4, 2008, although they do not list the name of the medical provider who made such diagnosis. (Id. at 917 (containing appointment notes from Dr. Hann dated March 25, 2021, listing "Depression 4/4/2008" on Plaintiff's "Problem List"), 1095 (same).)

Notably, Plaintiff's medical records also contain depression diagnosis by Dr. Kevin Neil Antonio on February 1, 2013. (Id. at 288.)[5] Additionally, appointment notes from Brian Jackson, N.P. dated May 1, 2020, state that Plaintiff complained of anxiety and depression, and list "[m]ajor depressive disorder, single episode, unspecified (status Active)" and "[m]ental disorder, not otherwise specified (status Active)." (Id. at 548–49, 552.) Further, notes from Dr. Talal Alquraini dated May 5, 2020, state that Plaintiff had "abnormal mood/affect noted" and her mood was "depressed, worried." (Id. at 555–57.)

Additionally, treatment notes from Dr. Havon Knight show that Plaintiff was diagnosed with bipolar disorder and prescribed medication to treat the disorder. (See id. at 1289–98.) On March 22, 2021, Plaintiff reported to Dr. Knight "having a Bipolar Disorder initially diagnosed years ago," Dr. Knight listed bipolar disorder as a chronic diagnosis, and prescribed Quetiapine Fumarate (i.e., Seroquel) to treat Plaintiff's bipolar disorder. (Id. at 1295, 1297.) Dr. Knight's March 24, 2021 note states the following

---

[5] The Court notes that the Administrative Record does not contain Dr. Antonio's February 1, 2013, appointment notes, (see AR), but the depression diagnosis, the physician's name (Dr. Kevin Neil Antonio), and the date of the diagnosis (February 1, 2013) are listed under "Active Problems" on Sharp Rees-Stealy Medical Group's urgent care notes dated November 24, 2013, (id. at 288).

regarding Plaintiff's bipolar disorder treatment: "Currently on Prozac 20 mg daily.  States she is still having a lot of difficulty sleeping.  Pharmacy to deliver Seroquel 25 mg QHS today." (Id. at 1294.)  Finally, on March 31, 2021, Dr. Knight stated in his notes "Continue Prozac 20 mg daily and Seroquel 25 mg QHS.  F/U with psychiatry as scheduled.  F/U with me in 4 weeks." (Id. at 1290.)

### 2. Plaintiff's Prescription of Fluoxetine[6]

Plaintiff reported taking Fluoxetine to treat depression in her Disability Report. (Id. at 205, 232.)  Plaintiff's medical records also indicate that she was prescribed Fluoxetine to treat bipolar disorder. (Id. at 1290, 1296–97.)  Keegan Wood, N.P., conducted four separate psychiatric evaluations of Plaintiff on May 19, August 18, September 18, and December 1, 2020, (see id. at 830–33, 1222–25, 1242–45, 1265–68), and stated in his appointment notes that Plaintiff "was placed on Prozac that treated depression well," (id. at 830, 1222, 1242, 1265).  Additionally, Fluoxetine was listed as Plaintiff's "current" medication in Sharp Rees-Stealy Medical Group's appointment notes dated November 24, 2013.  (Id. at 286, 289.)  Metro Mission Valley initially prescribed Plaintiff with Fluoxetine on April 7, 2014, and subsequently ordered refills seven times through August 12, 2019.  (Id. at 232.)  Sharp Rees-Stealy Medical Group continued to list Fluoxetine as a "current" medication for Plaintiff through 2020.  (See id. at 408, 410, 420, 430, 483–84, 500.)

Further, Patrick Armstrong, M.D. identified Fluoxetine as one of Plaintiff's "active" medications on February 18, and June 18, 2019.  (Id. at 445, 449, 453).  Notes from Kamen Zakov, M.D. also list Fluoxetine as one of Plaintiff's "active" medications on March 26, and March 31, 2020.  (Id. at 538, 542.)  On August 3, 2020, ENT

---

[6] Fluoxetine is an antidepressant, which is also known under the brand name Prosac.  See Hermiz v. Berryhill, Case No.: 3:18-cv-01035-BEN(KSC), 2019 WL 3780271, at *3 n.3 (S.D. Cal. Aug. 9, 2019); Humphreys v. Astrue, No. 12–cv–328–W(PCL), 2014 WL 1255889, at *4 (S.D. Cal. Mar. 24, 2014).

Associates of San Diego noted that Keegan Wood, N.P., prescribed Fluoxetine on February 19, 2020. (See id. at 682, 690.) Further, Dr. Knight's March 31, 2021, note stated that Plaintiff continued to take Fluoxetine, as well as the Quetiapine prescribed to treat her bipolar disorder. (Id. at 1289–90.) Finally, records from Dr. Riley Anderson dated April 7, 2021, list Fluoxetine as one of Plaintiff's "current" medications. (Id. at 962.)

### 3. State Medical Consultants' Opinions

On June 19, 2020, state agency medical consultant, Karen Ying, M.D., reviewed Plaintiff's medical records and filled out a "Medically Determinable Impairment and Severity" form. (Id. at 64.) She stated that Plaintiff had a medically determinable impairment, listed "Depressive, Bipolar and Related Disorders" as one of Plaintiff's impairments, and opined that the impairment was not severe. (Id.) Dr. Ying listed "12.04-Depressive, Bipolar, and Related Disorders" under "'B' Criteria of the Listings," and opined that Plaintiff did not have any limitations in her ability to understand, remember, or apply information, interact with others, and concentrate, persist, or maintain pace. (Id.) Dr. Ying further opined that Plaintiff had mild limitations in her ability to adapt or manage herself. (Id.)

On October 7, 2020, on reconsideration, state agency medical consultant, Ellen Rozenfeld, Psy.D., opined that Plaintiff had a medically determinable impairment, listed "Depressive, Bipolar and Related Disorders" as one of Plaintiff's impairments, and stated that the impairment was not severe. (Id. at 79–80.) Dr. Rozenfeld agreed with all of Dr. Ying's findings. (Id.)

### 4. Testimony during Plaintiff's administrative hearing

During Plaintiff's May 13, 2021 administrative hearing, Plaintiff's attorney cited "major depression" as Plaintiff's diagnosis at the beginning of the hearing, and reiterated at the end of the hearing that Plaintiff had been diagnosed with major depression. (Id. at 32, 47 (citing id. at 552).) The ALJ did not discuss or question Plaintiff regarding depression or bipolar disorder during the administrative hearing. (See id. at 29–47.)

### C. The ALJ's Evaluation of Plaintiff's Mental Impairments at Step Two of the Sequential Evaluation Process

#### 1. Applicable law

At step two of the sequential evaluation process, the Social Security Administration ("SSA") considers the medical severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). To establish that a medically determinable impairment is "severe," the claimant must show that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

The ALJ is required to "follow a special technique" at step two in evaluating the severity of the claimant's mental impairment. 20 C.F.R. § 404.1520a(a). First, the ALJ assesses the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether a medically determinable mental impairment is present. 20 C.F.R. § 404.1520a(b)(1). Second, if the claimant has a medically determinable mental impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" for four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(b)(2), (c)(3). These four functional areas are known as the "paragraph B criteria" due to how they are categorized in the listings. See 20 C.F.R. Part 404, Subpart P, Appendix 1.

The degree of limitation for each of these categories are rated on the following scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the degrees of limitation are rated as "none" or "mild," the ALJ typically concludes that the impairment is not severe, unless the evidence otherwise indicates that there is more than a

minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).  The ALJ's written decision must incorporate the pertinent findings and conclusions, and "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."  20 C.F.R. § 404.1520a(e)(4).

The inquiry at step two of the sequential evaluation process is a "de minimis screening device" to screen for groundless claims.  Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as 'a de minimis screening device to dispose of groundless claims.'").  The ALJ must consider the "combined effect of all of the claimant's impairments" on the claimant's ability to function "without regard to whether each [impairment] alone was sufficiently severe."  Id. at 1159.  For purposes of step two of the sequential evaluation process, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal citation omitted) (emphasis in original).

### 2. Analysis

#### a. The ALJ improperly assessed Plaintiff's mental health impairment(s) at step two of the sequential evaluation process.

The ALJ first stated in his written decision that although there was "reference in the record to depression," there was "insufficient support in the record to find depression as a medically determinable impairment."  (AR at 18 (citing id. at 552).)  The ALJ then stated that in making this finding, he had "considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments," also known as "Paragraph B" criteria.  (Id. at 18.)

With respect to the first functional area of understanding, remembering or applying information, the ALJ found that Plaintiff had no limitation.  (Id.)  The ALJ noted that the record demonstrated that Plaintiff could follow one- or two-step instructions to carry out

a task.  (Id.)  The ALJ further stated that Plaintiff was able to give background information regarding her work and medical history at her administrative hearing, and appropriately respond to questions.  (Id.)  The ALJ then stated that Plaintiff reported in her Function Report that she could follow written instructions "very well" and spoken instructions "well, if understood."  (Id. (citing id. at 243).)  Additionally, the ALJ cited Mr. Wood's December 1, 2020 mental status examination, which found "linear content [sic][7] and normal thought content."  (Id. at 18 (citing id. at 1223).)

Next, the ALJ found that Plaintiff had mild limitation in interacting with others.  (Id. at 18.)  The ALJ stated that Plaintiff reported in her Function Report that she had never been laid off or fired from a job due to problems with getting along with others, and she had "no problems" with authority figures.  (Id. (citing id. at 244).)  Additionally, the ALJ noted that the mental status examination performed by Mr. Wood found that Plaintiff had an "appropriate" attention span.  (Id. at 18 (citing id. at 1223).)  The ALJ also noted that Plaintiff was calm, polite, and cooperative at the administrative hearing.  (Id. at 18.)

Further, the ALJ found that Plaintiff had mild limitation in concentrating, persisting, or maintaining pace.  (Id.)  The ALJ stated that Plaintiff reported in her Function Report that she did not finish tasks that she started.[8]  (Id. (citing id. at 243).)  The ALJ also noted that Mr. Wood's mental status examination revealed "linear tc0 [sic] and normal thought content."  (Id. at 18 (citing id. at 1223).)  The ALJ concluded that medical records did not indicate that Plaintiff "was distracted by internal stimuli with any regularity during the relevant period."  (Id. at 18.)

---

[7] The referenced mental status exam found linear "thought process," not "content."  (See id. at 18, 1223.)

[8] The Court notes that, contrary to the ALJ's statement in his written decision, Plaintiff checked "Yes" in the referenced Function Report in response to the following question: "Do you finish what you start? (For example: a conversation, chores, reading, watching a movie)."  (See id. at 18, 243.)

1    Finally, the ALJ found that Plaintiff had no limitation in the functional area of
2 adapting or managing oneself. (Id.) The ALJ noted that in her Function Report, Plaintiff
3 did not report any difficulties with performing personal care activities, such as bathing or
4 grooming, and reported that she was able to prepare meals twice a day, complete
5 household chores, and manage her finances. (Id. at 18–19 (citing id. at 239–42).)
6    The ALJ concluded that because Plaintiff's medically determinable mental
7 impairment caused no more than "mild" limitation in any of the functional areas, and the
8 evidence did not otherwise indicate that there was more than a minimal limitation in
9 Plaintiff's ability to do basic work activities, her mental impairment was "nonsevere."
10 (Id. at 20 (citing 20 C.F.R. § 404.1520a(d)(1).)
11    The Court initially notes that the ALJ's written decision provides seemingly
12 contradictory assertions regarding whether Plaintiff had a medically determinable mental
13 impairment. (AR at 18–19.) The ALJ first stated that "there [wa]s insufficient support in
14 the record to find depression as a medically determinable impairment," (id. at 18), but
15 then concluded that Plaintiff's "medically determinable mental impairment cause[d] no
16 more than 'mild' limitation in any of the functional areas," (id. at 19).
17    Further, the ALJ cited one medical record in concluding that there was no
18 substantial evidence in the record to find that Plaintiff's depression was a medically
19 determinable impairment. (Id. at 18 (citing id. at 552).) The cited record contains notes
20 from Brian Jackson, N.P. dated May 1, 2020, which listed "[m]ajor depressive disorder,
21 single episode, unspecified (status Active)" and "[m]ental disorder, not otherwise
22 specified (status Active)" as Plaintiff's "Problem List" issues. (Id.; see also id. at 550.)
23 The ALJ also cited Keegan Wood, N.P.'s notes dated December 1, 2020, to support his
24 findings of "no limitations" to "mild limitations" in the four functional areas, (id. at 18–
25 19 (citing id. at 1222–25)), but did not cite or discuss notes from other appointments
26 Plaintiff had with Mr. Wood on May 19, August 18, and September 18, 2020, (see id. at
27 830–33, 1242–45, 1265–68). During all four appointments, Mr. Wood conducted mental
28 status examinations, (id. at 831–32, 1223–24, 1243–44, 1266–67), and completed "San

Diego County Adult Medi-Cal Mental Health Severity Analysis" forms, (id. at 832–33, 1224–25, 1244–45, 1267–68). The ALJ also did not cite or discuss numerous additional records documenting Plaintiff's history of depression, including Dr. Antonio's February 1, 2013 diagnosis of depression and Dr. Knight's March 22, 2021 diagnosis of bipolar disorder. (See id. at 15–24; see also id. at 288, 1297–98.)

Although a diagnosis is not dispositive in finding a medically determinable impairment, see 20 C.F.R. § 404.1521, the ALJ failed to cite, discuss, or even acknowledge diagnoses and prescription medication history related to Plaintiff's depression, (see AR at 288, 552, 555–57, 917, 1095), and bipolar disorder, (see id. at 1289–98). The ALJ's selective citations omitted records documenting Plaintiff's extensive history of outpatient psychiatric care and use of prescribed psychiatric medications. (Id. at 18–19, 1265–68.) "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." Robert D. v. Kijakazi, Case No.: 20cv2132-AJB (MSB), 2021 WL 5905734, at *6 (S.D. Cal. Dec. 14, 2021) (quoting Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004)); see also Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing, where the ALJ selectively relied "on some entries" in the claimant's records and "ignored the many others that indicated continued, severe impairment"); Fanlo v. Berryhill, Case No.: 17cv1617-LAB (BLM), 2018 WL 1536732, at *10 (S.D. Cal. Mar. 28, 2018) (stating that "[t]he ALJ is not permitted to 'cherry-pick' only the records that support her position"). While the ALJ followed the steps to evaluate the severity of Plaintiff's mental impairment, the ALJ erred by failing to address treatment records which undermined his conclusion, and his decision was not supported by substantial evidence in the record. See Darren Jeffrey C. v. Kijakazi, Case No.: 3:21-cv-01012-AHG, 2022 WL 4474261, at *16 (S.D. Cal. Sept. 26, 2022) (finding that the ALJ did not support his assessment of plaintiff's mental limitations at step two with substantial evidence, and instead, "pick[ed] out certain aspects of [p]laintiff's mental status examinations to find mild limitations while ignoring the overall diagnostic picture

that consistently showed more debilitating symptoms associated with [p]laintiff's depression, anxiety, and adjustment disorder"); <u>Rosemary Guadalupe V. v. Saul</u>, Case No.: 3:19-cv-00715-RBM, 2020 WL 85486, at *4–7 (S.D. Cal. Jan. 6, 2020) (finding that the ALJ improperly assessed plaintiff's mental health impairment at step two of the sequential evaluation process, where the ALJ ignored treatment records that undermined his conclusion, and "the record as a whole contain[ed] evidence of an impairment sufficient to pass the *de minimis* threshold of step two").

### b. The ALJ's error was not harmless

An error is harmless if it is inconsequential to the ALJ's ultimate nondisability determination. See <u>Rounds v. Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1007 (9th Cir. 2015) (finding that the ALJ's error was harmless because it was "inconsequential to the ultimate nondisability determination."); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation marks and citation omitted) ("[H]armless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."). As relevant in this case, an error at step two of the sequential evaluation may be harmless if an ALJ considers the claimant's mental impairment at steps four and five. See <u>Davenport v. Colvin</u>, 608 F. App'x 480, 481 (9th Cir. 2015) (upholding the ALJ's determination that the plaintiff's mental impairments were non-severe at step two, but concluding that "any error regarding the step-two determination is harmless because the ALJ proceeded to step five and considered [the plaintiff's] mental impairments as part of the analysis"); <u>Rosemary Guadalupe V.</u>, 2020 WL 85486, at *7 (citing <u>Lewis v. Astrue</u>, 498 F.3d 909, 911 (9th Cir. 2007)) ("[A]n error at the step two evaluation may be considered harmless if an ALJ extensively discusses the claimant's impairment at step four."); <u>Michael F. v. Kijakazi</u>, Case No.: 3:20-cv-00524-AHG, 2021 WL 4473176, at *5 (S.D. Cal. Sept. 30, 2021) ("If the Court finds it was error for the ALJ to find a claimant's mental impairments non-severe at step two, such an error may be harmless where the ALJ proceeds to step five of the disability analysis and considers the claimant's mental impairments as part of that analysis."). For

such an error to be harmless, the ALJ must consider how the combination of the impairments affect the claimant's ability to perform basic work activities, and incorporate that consideration into the RFC determination. See Smolen, 80 F.3d at 1290–92; see also Social Security Ruling 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985) ("Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.").

In this case, the ALJ erred at step two of his sequential evaluation process because he improperly evaluated Plaintiff's mental health impairment(s). The ALJ determined that Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except limited to occasional postural activity, except no climbing of ladders or scaffolds; no exposure to hazards such as dangerous moving machinery and unprotected heights; and no work in environments with excessive noise or environments requiring fine hearing. (AR at 19.) The ALJ did not discuss Plaintiff's mental impairment(s) in the RFC analysis and determined at step four of his sequential evaluation that Plaintiff could perform her past relevant work as a cytotechnologist. (See id. at 23.) At step five of the sequential evaluation process, the ALJ found that Plaintiff was not disabled. (Id.) The ALJ's error at step two may have prejudiced his findings at steps four and five, and the error was therefore not harmless. Loader v. Berryhill, 722 F. App'x 653, 655 (9th Cir. 2018) (finding reversible error where an ALJ found that plaintiff's depression was a medically determinable but nonsevere mental impairment at step two, but then "failed . . . even to mention [plaintiff's] depression or mental impairments when assessing his RFC, and the RFC itself [stated] nothing at all about such impairments or their effects," and the ALJ did not mention the impairment in the hypothetical questions posed to the VE); Hutton v. Astrue, 491 F. App'x. 850, 850–51, 2012 WL 6040731, at *1 (9th Cir. 2012) (finding reversible error, where an ALJ determined at step two that plaintiff's post-traumatic stress disorder ("PTSD") was "nonsevere," but did not include PTSD in his assessment of Plaintiff's RFC analysis at step four and in his hypotheticals to the VE at

step five of the sequential evaluation process).

## VI. REMEDY

Plaintiff moves the Court to reverse the Commissioner's decision and remand the case for further proceedings. (J. Mot. at 9, 17–18.) Defendant asks the Court to affirm the Commissioner's decision, or "[s]hould the Court disagree . . . remand for further proceedings." (Id. at 18.)

The reviewing court may enter a judgment "affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. Id. "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). The Court finds that further administrative proceedings could remedy defects in the ALJ's decision. On remand, the ALJ must conduct a supplemental evaluation of the evidence of mental impairment(s) and incorporate his findings in his decision. Remand will also allow the ALJ to reconsider Plaintiff's RFC, including all of her relevant limitations, and determine whether there are jobs available that Plaintiff can perform.

## VII. CONCLUSION

For the reasons stated above, the Court **REVERSES** the final decision of the Commissioner. The case is **REMANDED** for further proceedings to address the errors noted in this Order.

**IT IS SO ORDERED.**

Dated: September 27, 2023

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge